UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOMEDES ROMAN-CRUZ,<br><br>                             Petitioner,<br><br>                  v.<br><br>TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in her official capacity as Attorney General of the United States; LADEON FRANCIS, in his acting capacity as Field Office Director of Enforcement and Removal Operations, New York Field Office;<br><br>                            Respondents. | 25-CV-10522 (RA)<br><br>MEMORANDUM<br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

      Petitioner Nicomedes Roman-Cruz is a Guatemalan national who first entered the United States in 2007 and was thereafter removed, subject to an expedited removal order. Dkt. 10 ("Am. Pet.") ¶ 14; Dkt. 14 ("Gov. Opp'n") at 8. Roman-Cruz entered the United States three more times in 2014, and was, in each instance, apprehended and processed for removal to Guatemala based on a reinstatement of his prior removal order. Gov. Opp'n at 8. Roman-Cruz asserts that, shortly before crossing the border in 2014, he was kidnapped and held hostage by members of the Zetas cartel, who trafficked him over the U.S.-Mexico border. Am. Pet. ¶¶ 20–23. Since 2014, he states that he has lived in "perpetual flight and hiding" from the cartel, and was the subject of physical violence. *Id.* ¶ 22.

      Roman-Cruz reentered the United States in 2022 and was apprehended by immigration agents shortly thereafter. *Id.* ¶ 23. He passed a reasonable-fear interview and, in April 2023, was granted a Withholding of Removal to Guatemala under the Convention Against Torture ("CAT"),

after which he was released on an order of supervision ("OSUP"). *Id.* ¶ 26; Gov. Opp'n at 9. Roman-Cruz's CAT withholding—still valid today—means that Roman-Cruz cannot be deported to Guatemala. At the end of April 2023, following the grant of a Witholding of Removal to Guatemala, the Government reinstated Roman-Cruz's original order of removal and contacted Ecuador, Honduras, and the Dominican Republic to see if they would accept him. Gov. Opp'n at 9. No country accepted him. *Id.*; Dkt. 13 ("Pardo Decl.") ¶ 10.

On December 17, 2025, Roman-Cruz reported to ICE pursuant to his OSUP. *Id.* Although he is not alleged to have violated any of the terms of his OSUP, ICE took Roman-Cruz into custody, revoked his OSUP, and served him with a Warrant of Removal and a Warrant for Arrest of Alien. Gov. Opp'n at 9. The Government contends that he was also served with a Notice of Revocation of Release, signed by Assistant Field Director Darius Robinson, stating that the decision to revoke his OSUP had been made due to "changed circumstances in [his] case, specifically that ICE will proceed with a third country removal attempt." Dkt. 12-4 ("Notice of Revocation of Release"); Gov. Opp'n at 17. That same day, the Government alleges that it conducted an informal interview of Roman-Cruz, while he was in custody, "to afford him an opportunity to respond to the reasons for revocation of his OSUP." Gov. Opp'n at 10. This interview was conducted by Damien Giraldo, a Deportation Officer, who indicated that Roman-Cruz did not give a statement. Dkt. 12-6 ("Informal Interview Memorandum").

Because ICE cannot remove Roman-Cruz to Guatemala, it intends to detain him pursuant to 8 U.S.C. § 1231(a)(6) pending his removal to a third country. ICE has not yet found a third country willing to take him. Gov. Opp'n at 10; Pardo Decl. ¶ 18.

On December 18, 2025, while detained in Manhattan, Roman-Cruz filed a habeas petition through his next friend, Dkt. 1 ("Pet.") ¶ 14, and amended that petition on December 30, 2025.

2

The Government filed a return on January 2, 2025, Dkt. 14 ("Gov. Opp'n"), to which Roman-Cruz replied. Dkt. 16 ("Repl."). In his Amended Petition, Roman-Cruz brings a constellation of claims, all of which boil down to two core contentions: that (1) he is entitled to immediate release because the Government violated his due process rights when it revoked his OSUP and detained him on December 17, 2025; and (2) the Government must provide him with additional process before he is deported to a third country. The Court will decide this first cluster of claims in this Memorandum Opinion and Order, and holds, for the reasons that follow, that Roman-Cruz is entitled to immediate release for a violation of his Fifth Amendment right to procedural due process.

## DISCUSSION

Roman-Cruz alleges that the Government committed three procedural violations when it revoked his OSUP. First, he alleges that the ICE official who revoked his OSUP was not authorized to do so. Am. Pet. ¶¶ 47, 100–104; Repl. at 8. Second, he alleges that the revocation of his OSUP was not a valid exercise of ICE's discretion under the relevant regulations governing OSUP revocation. Am. Pet. ¶¶ 59–63; Repl. at 1–3. And third, he alleges that he was not given notice of the reasons for his OSUP revocation and an informal interview to respond as required by these regulations. Am. Pet. ¶¶ 64–69; Repl. at 3–5. For the reasons that follow, this Court holds that the ICE official who revoked Roman-Cruz's OSUP was not authorized to do so, which violated Roman-Cruz's right to procedural due process. As this provides an independent reason to order Roman-Cruz's release, the Court need not reach his other two arguments.

The process ICE must follow to revoke an OSUP is set forth in 8 C.F.R. § 241.4(*l*). As relevant here, 8 C.F.R. § 241.4(*l*)(2) provides that the "Executive Associate Commissioner" or the "district director" may "revoke release and return to Service custody an alien previously approved

3

for release under the procedures in this section." Other regulations permit the written delegation of authority vested in the Executive Associate Commissioner. *See* 8 C.F.R. § 241.4(c)(4).

Although the Government argues otherwise, Mr. Roman-Cruz has a procedural due process right, under the Fifth Amendment, that was violated when ICE failed to follow its own procedures. In *Velasco-Lopez v. Decker*, for example, the Second Circuit recognized that the existence of executive discretion does not preclude a procedural due process challenge where statute or regulation prescribes a process to be followed in the exercise of that discretion. 978 F.3d 842, 849–50 (2d Cir. 2020). Accordingly, as other courts in this District have held, the Court finds that Mr. Roman-Cruz has a "procedural right in connection with the decision" by ICE "to deprive him of liberty," even where such a detention is committed to ICE's discretion by statute. *Funes Gamez v. Francis*, 2025 WL 3263896, at *21 (S.D.N.Y. Nov. 24, 2025); *see also E.M.M. v. Almodovar*, 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 408 (S.D.N.Y. 2025).

At the crux of this case is the question of whether an authorized ICE official revoked Mr. Roman-Cruz's OSUP pursuant to Section 241.4(*l*). In a 2019 Delegation Order, Dkt. 12-7 ("Delegation Order"), Nathalie R. Asher, "an Executive Associate Director, which is the functional equivalent of the Executive Associate Commissioner identified in the applicable regulations," delegated certain authority under 8 C.F.R. § 241 "to assistant field office directors." *E.M.M.*, 2025 WL 3077995, at *6. The Delegation Order gives assistant field office directors authority "relating to" (1) "warrants of removal," (2) "reinstatement of removal," (3) "self-removal," and (4) "release of aliens from detention." Delegation Order at 1. Petitioner argues that because the revocation of release is not on this list, the authority to revoke an OSUP has not been delegated from the Executive Associate Director.

4

"Under the interpretive canon [of] *expression unius*, the omission of one item from a list of like items implicitly excludes that item." *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896, at *19 (S.D.N.Y. Nov. 24, 2025) (collecting cases). As other courts in this District have held, and as this Court now holds, "because the Delegation Order lists a series of other actions under 8 C.F.R. § 241 as to which authority has been delegated but does not include OSUPs or their revocation, the *expressio unius* canon excludes revocation." *Id*. "That omission is fatal to ICE's delegation argument, because revocation of release, which is a specific event enumerated elsewhere in the governing regulations, is found nowhere in the list of authorities delegated to assistant field office directors in the Delegation Order." *Id.* (quoting *E.M.M.*, 2025 WL 3077885, at *6).[1]

To negate this reading, the Government argues—as it did in *Funez Gamez*—that authority "relating to . . . release of aliens from detention" necessarily includes "all release-related authority," including "the authority to revoke release." Gov. Opp'n at 18. The Court disagrees. The Government points in its briefing to cases that stand for the proposition that "related to" is an expansive term, and argues that it is "the broadest connective . . . phrase that can be used." *Id.*; Tr. at 18:15–19; *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (relating to means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with" (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) ("The term 'related to'

---

[1] What's more, and as the Government recognizes, warrants of removal, reinstatement of removal, and self-removal all correspond to named parts within Section 241, while "release of aliens from detention" does not. *Id.*; *see* 8 C.F.R. § 241. "Revocation of release" is, however, a named subpart within Section 241.4, which itself is captioned "[c]ontinued detention of inadmissible, criminal and other aliens beyond the removal period." This lends further support to the reading that, if the Delegation Order had intended to confer revocation authority, it would have explicitly said so, as it did for other named parts within Section 241. *See E.M.M.*, 2025 WL 3077885, at *6.

5

is typically defined more broadly and is not necessarily tied to a causal connection. . . . Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with and 'associated with' . . . [and] broader in scope than the term 'arising out of.'").

Even crediting the Government's expansive construction of "related to," the Court is not persuaded. The Government's reading would have the Court, in essence, ignore the qualifying phrase "the release of aliens from," which sits just prior to the word "detention." The Court has little doubt that the authority to revoke release "ha[s] bearing [on], concern[s]," or "stand[s] in some relation" with detention in general. *Morales*, 504 U.S. at 383. But, under the canon against surplusage, "every clause and word" is to be given effect. *Panjiva, Inc. v. U.S. Customs and Border Prot.*, 975 F.3d 171, 178 (2d Cir. 2020). In the Court's view, the reading of the Delegation Order articulated in *Funez Games* is more persuasive than that advanced by the Government because it gives effect to every word in the relevant phrase, particularly the preposition "from." As a result, by conferring authority "bearing" on and "in connection with" "release . . . *from* detention," the Delegation Order does not confer authority to take what is effectively the opposite action: placing aliens *in* detention through the revocation of an OSUP.

Because the official who revoked Mr. Roman-Cruz's OSUP was not authorized to do so, by the Delegation Order or otherwise, his Fifth Amendment right to procedural due process was violated. As such, the Court will grant his habeas petition, in part, and order his immediate release. *See E.M.M.*, 2025 WL 3077995, at *6 (ordering release to remedy the same procedural error). The Government is ordered to release Mr. Roman-Cruz from custody within 24 hours of the date of this order, and shall file a letter certifying compliance with this Court's Order within the same period of time. Petitioner shall advise the Court no later than Friday, January 30, 2026 as to how

6

he wishes to proceed on the remaining claims raised in the Amended Petition seeking an injunction to impose additional procedures upon ICE before petitioner may be removed to a third country.

SO ORDERED.

Dated:   January 15, 2026
         New York, New York

                                          Ronnie Abrams
                                          United States District Judge